THE PEOPLE OF THE TERRITORY OF UTAH,
RESPONDENT, v. HYRUM FARRELL, APPELLANT.

1. ASSIGNMENTS OF ERROR.— EXCEPTION.—REVIEW ON APPEAL.—
Assignments of error in the abstract not supported by any
exception in the transcript will not be considered on appeal.

2. CRIMINAL LAW.—WAIVER OF OBJECTION.—EVIDENCE.—Where on
a criminal trial, defendant's counsel waived any objection he
had made to evidence admitted, the appellate court will not
pass on the admissibility of such evidence.

3. ID.—SEPARATE TRIAL.—FATAL ERROR.—On the separate trial of
one of two who had been indicted together for larceny, it is
fatal error to admit against the one on trial the acts and state-
ments of the other made after the crime had been completely
committed.

(No. 524.  Decided June 14, 1895.  40 P. R. 703.)

APPEAL from the District Court of the Fourth Judicial
District.  Hon. James A. Miner, *Judge.*

Hyrum Farrell was convicted of grand larceny and
appeals.  *Reversed.*

*Mr. L. R. Rhodes,* for appellant.

Defendant had been tried and acquitted of stealing cattle
from one Clark, yet on the pretense of identification of
the hides, Clark was allowed to go into all the evidence
respecting the cattle the same, and as fully, as though
defendant was on trial for the larceny of these identical
cattle.  This was error.  Wharton's Crim. Ev. §§ 29, 30,
48; *Farrar* v. *State,* 2 Ohio St. 54; *State* v. *Miller,* 47
Wis. 530.  The court allowed Clark to testify over defend-
ant's objection about what John Farrell, codefendant, said

and did after the crime, if any, had been completely committed. This was fatal error. *People* v. *Moore,* 45 Cal. 19. The witness Belknap was allowed to testify as to statements of John Farrell; also that Belknap as sheriff had arrested John Farrell at Baker City, Oregon. After allowing all this evidence to go before the jury, the court finally said that it was all stricken out. Such ruling as to evidence is not allowable. Wharton's Crim. Ev. § 699; *People* v. *Moore, supra;* 4 Enc. of Law, 63; *State* v. *Weaver,* 11 N. W. 675; *People* v. *Parker,* 34 N. W. 720; *Anarchist Case,* 12 N. W. 995; *People* v. *Williams,* 24 Mich. 161. The court erred in instructing the jury that the necessary evidence to corroborate an accomplice need be but slight. *People* v. *Echert,* 16 Cal. 3; *People* v. *Ames,* 39 Cal. 403; *People* v. *Thompson,* 50 Cal. 481; *Johnson* v. *Miller,* 63 Ia. 730; 1 Enc. of Law, 80.

*Mr. W. L. Maginnis,* Assistant U. S. Attorney, for respondent.

SMITH, J.:

The defendant was indicted and tried for stealing certain cattle of one John Carver. The defendant was found guilty and sentenced to a term of imprisonment in the penitentiary. From this judgment he appeals.

Many errors are assigned. Several assignments of error are made in the abstract that are not supported by any exception in the transcript, and these, of course, cannot be considered by us. The following matters however are fairly presented by the record, and are relied on here: (1) A witness named Clark was permitted to testify to the loss of certain cattle claimed to have been stolen on the same night that Carver's cattle were stolen. Clark and Carver lived in the same vicinity. The defendant had been tried and acquitted upon the charge of stealing Clark's

cattle. Under these circumstances he objected to the reception of any testimony relative to the loss or theft of Clark's cattle. His objection was overruled, and he excepted. (2) The second error relied on is that the court received the evidence of the witnesses Clark and Belknap to the effect that, after the cattle had been stolen and killed, according to the theory of the prosecution, one John Farrell, a brother of the defendant, and in the absence of defendant, made certain statements to these witnesses, Clark and Belknap, and took them and showed them certain hides of cattle recently butchered, among which, John Farrell claimed, were the hides of the stolen cattle, and among which Clark found the hides of the cattle that he himself had lost, and for the stealing of which the defendant had just been tried and acquitted. (3) The third error assigned is that the court permitted the witness Engold to testify to certain statements made by John Farrell, in the absence of defendant, on the night the cattle were stolen. Several other errors are assigned in the brief and abstract, and were urged in the oral argument, including some objections to the instructions given. We have looked into the transcript and find no objection was made or exception taken at the trial. The assignment here appears to be an afterthought, and, as we have before stated, will not be considered by us.

As to the first error assigned, which we have stated above, the district attorney concedes that it is not competent, ordinarily, to prove a separate larceny than that charged in the indictment, in order to secure a conviction, but claims in this case that the objection of defendant to Clark's testimony was sustained, and no error was committed in the respect alleged. We have carefully looked into the transcript and we find the following proceedings took place: The witness Clark was a witness called by the prosecution. After stating his place of residence, he was

asked to testify as to the theft of certain cattle of his own, alleged to have been stolen on the same night that Carver's cattle were stolen. This testimony was objected to for the reason that defendant had already been tried for stealing these cattle belonging to Clark and acquitted. The court, after a long colloquy with counsel, in which he intimated that the testimony might be received, but did not squarely rule on the objection, was interrupted by counsel for defendant with the following statement: "I am perfectly willing that it [speaking of Clark's testimony] shall go in, with this understanding: that there shall be no inference drawn in any manner from the transaction, and this jury shall be informed that this man has been honorably acquitted of any charge of stealing these cattle." Thereupon the evidence was received, and the jury at the time was instructed by the court as follows: "The jury are instructed that the testimony of this larceny, or supposed larceny, from Clark, is no evidence in this case, and the jury have no right to consider it as a distinct act of larceny." We are of opinion that this action of the defendant fully waived any objection he had made to this testimony, and relieves us from any duty to determine whether the evidence was admissible or not.

The second error stated above, and which embraces two or three assignments in the transcript, is more serious. It involves the question whether or not, when two or more persons are indicted together, as the defendant and John Farrell were in this case, upon the separate trial of one, the prosecution may prove the acts and statements of the other, made after the crime has been fully and completely committed. Admitting, for the sake of argument, that there was sufficient evidence of a conspiracy or joint intention to commit a crime to go to the jury, still are the acts and statements of one conspirator admissible against

the other, when made in his absence, and after the crimi-
nal enterprise had completely terminated? The evidence,
in brief, was that on Sunday night the cattle were stolen;
that they were driven to Ogden, a distance of 14 miles.
There was a conflict in the evidence as to whether defend-
ant had anything at all to do with driving them, but cer-
tain it is that the last 10 or 12 miles of the distance he
did not. They were driven to John Farrell's slaughter-
house. On Monday they were butchered by an employé
of John Farrell, and the meat was sold by John Farrell.
On Monday or Tuesday either John Farrell or an employé of
his took the hides and hid them in the brush. On Wed-
nesday the sheriff, Belknap, and Clark, went to John Far-
rell in Ogden, and in the absence of defendant, and, after
informing him that the cattle had been stolen, demanded
to know where the hides were. John Farrell then took
the witnesses up the river to where the hides were con-
cealed, and produced them, and they were delivered to the
sheriff. Some time afterwards, one Engold, who was also
charged to have been connected with the crime with de-
fendant, took the sheriff and pointed out where certain ear-
marks and brands were concealed. It was shown that the
brands had been cut out of the hides that John Farrell
had produced to the sheriff. The defendant was not
present and knew nothing of this circumstance. Without
copying the record, we may say that the whole of the testi-
mony was objected to. The trial court ruled that all that
John Farrell and Engold did after the offense was com-
plete might be received in evidence, but failed to rule on
the question whether what they said at the same time was
competent. But, although repeated objections were made,
the substance of even their statements was gotten before
the jury. It is claimed by the attorney for the people
that very much of this testimony came in without objec-

tion from defendant, and that the questions objected to were not of themselves specially injurious, also that some of the testimony received over the objection was afterwards stricken out.

We have carefully read the transcript in this case, and take this occasion to remark that the abstracts filed are remarkable chiefly for inaccuracy, and that the transcript, if correct, discloses that the court failed to rule on at least half of the objections made, and we incline to think there must be omissions in it. But we must pass on it as we find it. The transcript discloses that the defendant aptly objected to all testimony as to the words and acts of the parties who were charged to be confederates with him said and done after the alleged crime was complete. Notwithstanding all these objections, and many of them were sustained, still all of the testimony as to what these confederates did after the crime was complete was finally received. Much of the substance of what they said was also gotten before the jury, although in every instance the literal conversations were excluded, and the court finally squarely ruled that what the alleged confederates did after the crime was complete could be received, but the admissibility of what they said was not ruled upon. There is no serious conflict in the authorities upon this question. Mr. Wharton, in his work on Criminal Evidence (§ 699, 9th ed.), lays down the rule in this language: "When the common enterprise is at an end, whether by accomplishment or abandonment, no one of the conspirators is permitted, by any subsequent act or declaration of his own, to affect the others." And again, at section 700, the same author says: "It makes no difference as to the admissibility of the act or declaration of a conspirator against a defendant, whether the former be indicted or not, or tried or not, with the latter; for the making one

a codefendant does not make his acts or declarations any more evidence against another than they were before."

We do not deem it necessary to multiply authorities upon this question. We have examined several of the many cited in note 1, p. 600, and note 3, p. 601, Whart. Cr. Ev. (9th ed.), and find them directly in point, and we know of no case holding to the contrary rule. The district attorney has cited none. It will be observed that the rule prohibits evidence of both the acts and declarations. It is claimed by the district attorney that the defendant's counsel waived objection to this testimony. We have carefully examined the colloquy between the court and counsel on both sides, found in the transcript, which is relied on to furnish this waiver. It is quite lengthy, and we will not repeat it in this opinion. The substance of it was that the defendant objected to the testimony as to the production of the hides by John Farrell. The objection was argued by counsel. The district attorney claimed that it was admissible on one ground. The court ruled it was admissible on another. After the court had announced its reason for admitting this testimony, but before any final ruling had been made, counsel for the defendant interjected the expression, " I don't care," and nothing more than this. There is nothing else in the record upon which a waiver can be in anywise claimed. From the context we are of opinion that there was no intention to waive anything, and that the words interjected were intended merely as part of an argument with the court, and as signifying that counsel for defendant did not agree with the view of the court. This conclusion is supported by the fact that this colloquy occurred when the witness Clark was under examination, he being the first witness who testified in regard to the acts of John Farrell after the cattle were stolen, and the defendant

thereafter repeatedly objected to all this testimony showing clearly that he never intended to waive his objection.

We are of opinion that the court erred in admitting this testimony and we are also of the opinion that this error was prejudicial. We are not prepared to say that there was error in allowing Engold to testify that on the night the cattle were stolen, and while the act of theft was still in progress, John Farrell being at home, some one whistled out at the gate as if giving a signal; also that John Farrell went out, and shortly came back and said that it was the defendant who had whistled at the gate. There was evidence of a conspiracy to steal the cattle in which the defendant and John Farrell were concerned. We think the evidence as to all John Farrell did and said before the crime was complete was admissible.

The other questions argued here are not properly saved by exception, in the record, and cannot be considered.

On account of the error above pointed out, the judgment is reversed and the case remanded, with directions to grant a new trial.

MERRITT, C. J., and BARTCH and KING, JJ., concur.